An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-750

Filed 3 December 2025

Wake County, No. 21CR211407-910

STATE OF NORTH CAROLINA

       v.

DANIEL VALENCIA RODRIGUEZ

Appeal by defendant from judgments entered 15 September 2023 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 24 September 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General A. Mercedes Restucha, for the State.*
>
> *Thomas, Ferguson & Beskind, LLP, by Olivia Warren, for defendant-appellant.*

ZACHARY, Judge.

Defendant Daniel Valencia Rodriguez appeals from the trial court's judgments entered upon a jury's verdicts finding him guilty of statutory rape of a child by an adult, statutory sex offense with a child by an adult, and taking indecent liberties with a child. On appeal, Defendant argues that the trial court committed plain error by admitting certain expert witness testimony that constituted impermissible

vouching, or, in the alternative, that Defendant received the ineffective assistance of counsel due to trial counsel's failure to object to the admission of the alleged vouching. After careful review, we conclude that Defendant received a fair trial, free from error.

## I.     Background

On 23 August 2021, a Wake County grand jury indicted Defendant for multiple sexual-abuse charges against "C.M."[1], the daughter of his girlfriend. Defendant's case came on for jury trial on 11 September 2023 in Wake County Superior Court.

At trial, the State introduced several witnesses, one of whom was Dr. Andrew Jakubowicz. Dr. Jakubowicz, who was admitted as an expert in emergency pediatric medicine, testified regarding C.M.'s interview and her physical examination, which were conducted on 21 July 2021 at WakeMed Children's Emergency Department.

The State introduced numerous other witnesses at trial, including: C.M., who testified as to the details of Defendant's sexual abuse, which began when she was "[t]en years at the most"; C.M.'s older sister, who testified as to C.M.'s disclosure of Defendant's sexual abuse, her changes in behavior, and the report of Defendant's abuse to law enforcement; two law enforcement officers, who spoke with C.M., her older sister, and their mother, interviewed Defendant, and collected evidence; a child protective services agent, who interviewed C.M. and members of her family, conducted home visits, and observed C.M.'s medical evaluation; a detective, who

---

[1] To protect the identity of the minor child, we employ the initials to which the parties agreed. *See* N.C.R. App. P. 42(b).

interviewed Defendant, collected his DNA, and observed C.M.'s medical evaluation; a trauma nurse and another law enforcement officer, both of whom handled C.M.'s rape kit; a crime scene investigator, who investigated the home at which the abuse occurred; and a forensic scientist, who conducted laboratory tests on the DNA evidence that was collected. The State also introduced a video of C.M.'s medical evaluation, which was admitted into evidence and published to the jury.

At the conclusion of the trial, the jury returned verdicts finding Defendant guilty of all charges. The trial court entered judgments against Defendant, consolidating his convictions for statutory rape of a child by an adult and statutory sex offense with a child by an adult and sentencing him to a term of 300 to 420 months' imprisonment in the custody of the North Carolina Department of Adult Correction. The court also sentenced Defendant to a consecutive term of 16 to 29 months' imprisonment for his conviction for taking indecent liberties with a child. The trial court entered a permanent no-contact order, required Defendant to register as a sex offender, and required Defendant to submit to a risk assessment conducted by the Department of Adult Correction to determine the need for satellite-based monitoring.

Defendant gave oral notice of appeal.

**II.    Discussion**

Defendant argues on appeal that the trial court committed plain error by admitting certain expert testimony that constituted improper vouching or, in the

alternative, that he received the ineffective assistance of counsel due to his trial counsel's failure to object to the admission of the alleged improper vouching. We conclude that the trial court did not err by admitting the challenged portion of expert testimony and thus that Defendant did not receive the ineffective assistance of counsel.

## A. Vouching

First, Defendant contends that "the trial court committed plain error by allowing the State's expert witness to vouch for C.M.'s credibility when the treating physician testified that he 'just knew that . . . this girl had been wronged.' " We disagree.

### 1. Standard of Review

In criminal cases, certain evidentiary and instructional issues that were not properly preserved by objection at trial and that are not otherwise "deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4).

Defendant concedes that "defense counsel did not object to this testimony at trial," which he now challenges on appeal. Therefore, he "specifically and distinctly contend[s]" that the admission of this testimony amounted to plain error and seeks plain-error review. *Id.*

As our Supreme Court recently reiterated, plain error is established by

satisfying "a three-factor test." *State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024). "First, the defendant must show that a fundamental error occurred at trial." *Id.* "Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict." *Id.* (cleaned up). "Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up).

## 2. Analysis

"[I]t is fundamental to a fair trial that a witness's credibility be determined by a jury, that expert opinion on the credibility of a witness is inadmissible, and that the admission of such testimony is prejudicial when the State's case depends largely on the testimony of the prosecuting witness." *State v. Crabtree*, 249 N.C. App. 395, 403, 790 S.E.2d 709, 715 (2016) (citation omitted), *aff'd*, 370 N.C. 156, 804 S.E.2d 183 (2017). Therefore, "[e]xpert opinion is not admissible to vouch for a victim's credibility." *State v. Betts*, 377 N.C. 519, 523, 858 S.E.2d 601, 604 (2021).

"In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." *State v. Stancil*, 355 N.C. 266, 266–67, 559 S.E.2d 788, 789 (2002). "Thus, an expert witness's definitive

diagnosis of sexual abuse is inadmissible unless it is based upon supporting physical evidence of the abuse." *State v. Warden*, 376 N.C. 503, 507, 852 S.E.2d 184, 188 (2020) (cleaned up); *see also State v. Perdomo*, 276 N.C. App. 136, 140, 854 S.E.2d 596, 600 (2021) ("For expert testimony to amount to vouching for a witness's credibility, that expert testimony must present a definitive diagnosis of sexual abuse in the absence of supporting physical evidence of the abuse." (cleaned up)), *disc. review denied*, 380 N.C. 678, 868 S.E.2d 859 (2022).

In the instant case, on direct examination, Dr. Jakubowicz testified in part as follows:

> Q. And can you tell us about that interview that you ha[d] with [C.M.]?
>
> A. I mean, so it happened, you know, obviously, a couple years ago. I remember -- *the thing that I think that strikes me the most when I saw this case come across is* -- you know, unfortunately, I see a lot of these cases, you know, and a lot meaning once a month, you know, in my practice. This is not an irregular thing for us to have to do, but when I walked -- I remember her case two years, you know -- *I remember her case because as I walked out of that room, I -- you just knew that -- and it's more of a gut feeling, this girl had been wronged.*

(Emphases added).

Defendant specifically challenges the emphasized testimony, claiming that it "improperly conveyed the opinion that C.M.'s allegations had actually happened and therefore constituted impermissible vouching." However, we agree with the State that this portion of Dr. Jakubowicz's testimony instead "reflected the observations he

made of the victim during his examination." Dr. Jakubowicz's explanation of his distinct recollection of C.M.'s case as resulting from his feeling upon interviewing her was not a "definitive diagnosis of sexual abuse." *Warden*, 376 N.C. at 507, 852 S.E.2d at 188 (citation omitted). Indeed, Dr. Jakubowicz's statement that "it's more of a gut feeling" confirmed that he was not opining that "sexual abuse ha[d] *in fact* occurred." *Stancil*, 355 N.C. at 266, 559 S.E.2d at 789.

Accordingly, the challenged portion of Dr. Jakubowicz's testimony did not constitute improper vouching. We discern no error, let alone plain error, in the trial court's admission of this expert testimony. Defendant's argument is overruled.

## B. Ineffective Assistance of Counsel

Defendant also contends that "[i]n the alternative, trial counsel was ineffective for not objecting to the impermissible vouching by the State's expert."

### 1. Standard of Review

"On appeal, this Court reviews whether a defendant was denied effective assistance of counsel de novo." *State v. Harris*, 256 N.C. App. 549, 557, 808 S.E.2d 327, 332 (2017) (citation and italics omitted).

### 2. Analysis

"A defendant's constitutionally[ ]guaranteed right to counsel includes the right to the effective assistance of counsel." *State v. Beckham*, 145 N.C. App. 119, 125, 550 S.E.2d 231, 236 (2001). "Ineffective assistance of counsel claims brought on direct review will be decided on the merits when the cold record reveals that no further

investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *Harris*, 256 N.C. App. at 557, 808 S.E.2d at 333 (cleaned up). "To succeed on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Worley*, 268 N.C. App. 300, 310, 836 S.E.2d 278, 286 (2019) (cleaned up), *disc. review denied*, 375 N.C. 287, 846 S.E.2d 285 (2020).

As stated above, the trial court did not err by admitting the portion of Dr. Jakubowicz's testimony that Defendant asserts constituted improper vouching. Therefore, Defendant has failed to show that his counsel was deficient in failing to object to the admission of this testimony. *Id.* Defendant did not receive the ineffective assistance of counsel and his arguments regarding this point are without merit.

**III.    Conclusion**

For the reasons stated above, we conclude that the trial court did not err or commit plain error.

NO ERROR.

Judges HAMPSON and WOOD concur.

Report per Rule 30(e).